Lorena Suette **DUNCAN**,
Plaintiff–Appellee,

v.

**BOEING TENNESSEE, INC.**,
Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

Feb. 24, 1992.

David E. Smith, Hodges, Doughty & Carson, Knoxville, for defendant-appellant.

Roger L. Ridenour, Ridenour & Ridenour, Clinton, for plaintiff-appellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation appeal, the trial court awarded the employee 75 percent permanent partial disability to a scheduled member—the left leg. The defendant contends that the evidence preponderates against the verdict and that voca-

tional disability evidence is inadmissible to establish the loss of use of a scheduled member. We disagree and affirm.

## FACTUAL BACKGROUND

Lorena Suette Duncan, now aged 49, had an eighth-grade education at the time of her employment by the defendant, Boeing Tennessee, Inc., in 1984. Prior to her employment at Boeing, she had worked primarily in unskilled or semi-skilled jobs as a waitress, a textile machine operator, and a forklift operator. From 1984 to 1990 at Boeing, she had worked as a forklift operator, overhead crane operator, and as a computer and stock clerk. The duties of her job required her to squat and to stand and sit for long periods. Duncan fell at work on June 10, 1988, while descending from a ten-foot ladder, and injured her left foot and left knee. Dr. Geron Brown, an orthopedic surgeon, treated her over the course of two years and finally performed knee surgery in February of 1990, removing a portion of the cartilage. Dr. Brown assessed a 15 percent disability to the left lower extremity as a result of her knee injury and released her to return to work with restrictions which limited standing and squatting and ladder climbing to a height of no more than four feet. Boeing made available light-duty work for her; however, she was unable to perform it and thereafter was terminated.

At the trial, a vocational expert testified, over objection, that as a result of her injury she was 70 percent vocationally disabled because she was disqualified from that number of jobs that she could formerly have performed prior to the injury and that she could do only light or sedentary work. Duncan herself testified that she could not perform any of the jobs that she had performed prior to her injury.

Based on the foregoing evidence, which was largely undisputed, the trial court awarded 75 percent disability to the left lower extremity.

■ Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings,

unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e) (1983 & Supp.1991); *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143 (Tenn.1989).

The defendant argues that the evidence preponderates against the award and that vocational disability evidence should not be admissible in determining the loss of use of a scheduled member. The defendant insists that the outcome of this case is controlled by the case of *Oliver v. State,* 762 S.W.2d 562 (Tenn.1988). In *Oliver,* the Commissioner below held that the employer was not entitled to recover for 50 percent anatomical disability to the left wrist because he could not demonstrate "an existing earning capacity which was diminished when the work-related disability appeared." This Court reversed, saying:

> Under T.C.A. § 50–6–207(3) one suffering such a work-related disability is entitled to compensation for the partial loss of the use of the scheduled member of his body without regard to this loss of earning power or wages. If we were to follow the Commissioner's reasoning, no remedy would be available to those individuals who might be so unfortunate as to partially lose the use of or totally lose a part or member of their body from a work-related injury, while at the same time being so unfortunate as to suffer from some other unrelated physical or emotion affliction which has rendered them disabled prior to the initiation of a workers' compensation claim.

*Id.* at 566. Accordingly, in *Oliver,* we held that vocational disability was not an essential ingredient to recovery for the loss of use of a scheduled member under Tenn. Code Ann. § 50–6–207(3).

However, our holding in *Oliver* was not that vocational disability is inadmissible evidence in cases involving scheduled members. Our holding was simply that a worker does not have to show vocational disability or loss of earning capacity to be entitled to the benefits for the loss of use of a scheduled member.

■ Both before and since *Oliver,* we have made it clear that vocational disability evidence is admissible as one factor to determine the loss of use of a scheduled

member. Before *Oliver*, in *Jaske v. Murray Ohio Mfg. Co., Inc.*, 750 S.W.2d 150 (Tenn.1988), we upheld a trial court award of 20 percent permanent partial disability of two hands—scheduled members—and commented that the trial judge, in assessing the extent of employee's disability, may properly consider non-medical factors, to-wit:

> [T]he fact of employment after an injury, the earning power of the injured workman, and his earnings are to be taken into consideration along with all other factors involved, to include whether the employee, in light of his education, his physical and mental abilities, or the lack thereof, is employable in the open market.

*Id.* at 151 (quoting *Ware v. United States Steel Corp.*, 541 S.W.2d 107, 110–11 (Tenn. 1976)).

Since *Oliver*, in *Miles v. Liberty Mutual Ins. Co.*, 795 S.W.2d 665 (Tenn.1990), this Court approved a 28 percent disability award to each upper extremity, based on proof of medical anatomical disability ranging from 2 to 5 percent and vocational disability evidence ranging from 10 to 60 percent. We again made it clear that:

> In determining the extent of the worker's disability, the trial judge is not required to accept without reservation an expert's opinion, but is charged with making an independent determination on consideration of such factors as age, education, training, job skills, work experience, and job opportunities available to a worker with the anatomical disability of plaintiff.

*Id.* at 666. *See also Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 459 (Tenn.1988).

Having so decided, we affirm the judgment of the trial court, with the costs of the appeal to the defendant, Boeing Tennessee, Inc.

REID, C.J., and DROWOTA, O'BRIEN, and DAUGHTREY, JJ.